**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Jerry J. Lukes and Blanche Lukes, husband and wife,<br><br>    Plaintiffs,<br><br>vs.<br><br>American Family Mutual Insurance Company, a Wisconsin corporation,<br><br>    Defendant. | No. 04-2022-PHX-JAT<br><br>**ORDER** |

Pending before the Court are the Defendant's Motion for Summary Judgment (doc. 85), the Plaintiffs' Motion for Partial Summary Judgment Re: Applicability of "Pollutant" Exclusion (doc. 87), and the Plaintiffs' Motion for Partial Summary Judgment Re: American Family's Contractual Obligation to Include Sales Tax in Computation of Actual Cash Value Adjustment (doc. 89). The Court now rules on the motions.

I.    BACKGROUND

On September 20, 2003, American Family Mutual Insurance Company (the "Defendant") issued an insurance policy (the "Policy") to Jerry and Blanche Lukes (the "Plaintiffs"). The Policy provided coverage for a dwelling located at 722 West Moon Valley Drive, Phoenix, Arizona ("the Insured Property"). The Policy also provided indemnity protection for damage to personal property on the premises under certain circumstances.

On March 17, 2003, a fire damaged the Insured Property. The Plaintiffs submitted

various claims to the Defendant. After investigating the fire and the resulting damage, the Defendant paid only a portion of the claims.

The Plaintiffs argue that the Defendant is liable under the Policy to pay for the full amount of the damage to the dwelling and for the full amount of damage to the contents located within the dwelling at the time of the fire. The Plaintiffs contend that the Defendant was obligated to include sales tax in calculating the amount of actual cash value when adjusting the present fire loss involving damage to the contents. The Plaintiffs contend that the Defendant is also liable under the Policy to pay for living expenses incurred by the Plaintiffs as a result of the fire.

On August 26, 2004, the Plaintiffs filed a Complaint in Maricopa County Superior Court alleging claims of: (1) breach of contract: (2) bad faith; (3) declaratory judgment; and (4) estoppel. On September 27, 2004, the Defendant removed this action to the United States District Court for the District of Arizona alleging diversity jurisdiction. The Defendant is a Wisconsin corporation with a principal place of business in Madison, Wisconsin. The Plaintiffs are citizens of the State of Arizona. The alleged amount in controversy exceeds the jurisdictional prerequisite. This Court has jurisdiction pursuant to 28 U.S.C. § 1332.

On February 28, 2006, the Defendant filed a Motion for Summary Judgment on the Plaintiffs' bad-faith and punitive-damages claims. That same day, the Plaintiffs filed two Motions for Partial Summary Judgment asking the Court to determine: (1) whether the Policy's "pollutant" exclusion is applicable in this case; and (2) whether the Policy included a contractual obligation to include sales tax. The Court heard oral argument on the motions on August 14, 2006.

I.     LEGAL ANALYSIS AND CONCLUSION

The standard for summary judgment is set forth in Rule 56(c) of the Federal Rules of Civil Procedure. Under this rule, summary judgment is properly granted when: (1) no genuine issues of material fact remain; and (2) after viewing the evidence most favorably to the non-moving party, the movant is clearly entitled to prevail as a matter of law. Fed. R. Civ. P. 56; *Celotex Corp. v. Catrett,* 477 U.S. 317, 322-23, 106 S.Ct. 2548, 2552-53 (1986);

*Eisenberg v. Ins. Co. of N. Am.,* 815 F.2d 1285, 1288-89 (9th Cir. 1987). The court must resolve all ambiguities and draw all reasonable inferences in favor of the non-moving party. *Provenz v. Miller*, 102 F.3d 1478, 1483 (9th Cir. 1996).

The parties agree that Arizona law governs the Policy at issue in this case. As a federal court sitting in diversity, this Court is bound to apply Arizona substantive law to the remaining state-law claims. *McClaran v. Plastic Indus.,* 97 F.3d 347, 356 (9th Cir. 1996); *Kabatoff v. Safeco Ins. Co. of Am.,* 627 F.2d 207, 209 (9th Cir. 1980) (citing *Erie R.R. Co. v. Tompkins,* 304 U.S. 64, 78, 58 S.Ct. 817, 822 (1938)); *Yazzie v. Olney, Levy, Kaplan & Tenner,* 593 F.2d, 103 n.4 (9th Cir. 1979).

### A. Plaintiffs' Breach-of-Contract Claim

The Defendant argues that there are no material questions of fact remaining for trial because: (1) the Plaintiffs have failed to come forward with any evidence that the actual cost to repair the damaged building and/or to replace the damaged personal property is greater than the amounts already paid by the Defendant; (2) the Plaintiffs cannot prove that they are entitled to more than the $10,000, policy limits for asbestos abatement; and (3) the Plaintiffs cannot prove that the Defendant is required to advance sales tax in the personal property settlement before the property is replaced.

The Plaintiffs cross-move for summary judgment and ask the Court to find, as a matter of law, that the Policy: (1) required the Defendant to include sales tax; and (2) the "pollutant exclusion" or policy limit for asbestos abatement is invalid or unenforceable under Arizona law.

#### 1. Plaintiffs' "Actual" Damages

The Defendant argues that it is entitled to summary judgment with respect to the breach of contract claim because the Plaintiffs have failed to come forward with any evidence showing that the actual cost to repair the damaged building and/or replace the damaged personal property is greater than the amounts already paid by the Defendant.

The Plaintiffs provide evidence supporting their position that although the exact cost to repair the damaged building and replace the damaged personal property is unknown at this

1 time, the Defendant has failed to pay approximately $46,831.48 in non-asbestos-related repair damages and $24,454.48 in asbestos-related repair damages. This is sufficient to raise a question of fact precluding summary judgment on this issue.

2. Pollutant Exclusion/Policy Limit for Asbestos Abatement

The Insured Property was damaged by a fire. As part of the repair, building materials containing asbestos had to be removed prior to replacement. The parties agree that the Policy at issue in this case contains a "Pollutant Exclusion," and that asbestos is included in the definition of "pollutants."[1] The Defendant has taken the position that this exclusion removes this item of expense from coverage. However, the Defendant agrees that the Policy does allow $10,000 worth of supplemental coverage toward the removal of asbestos.

The Plaintiffs argue that the Policy's Pollutant Exclusion cannot be enforced because the damages in this case were the result of a fire loss, and the New York standard fire policy does not contain an exclusion or limitation on coverage related to "pollutants." The Plaintiffs' argument is premised on the fact that Ariz. Rev. Stat. Ann. ("A.R.S") § 20-1503 (West 2002), requires all fire insurance policies in the State of Arizona to conform with the "New York Standard fire policy, edition of 1943."

While this is a correct statement of the law, A.R.S. § 20-1507(A) also allows riders or endorsements "insuring against indirect or consequential loss or damage." In other words, the Policy cannot exclude losses directly caused by the fire, regardless of whether they contained asbestos. However, the Policy can insure against indirect loss caused by asbestos. Either the building materials in this case containing asbestos were directly destroyed or damaged by the fire and are a direct fire loss, or they had to be removed as a consequential loss resulting from the fire. But this is a question of fact that the Court cannot determine at the Summary Judgment stage of these proceedings. Additionally, for the reasons set forth below, the Defendant cannot be held liable for bad faith for applying the pollutant exclusion.

---

[1] As defined by the Policy, a pollutant is "any solid, liquid, gaseous or thermal irritant or contaminant, in any form including, but not limited to . . . asbestos."

- 4 -

1  The Plaintiffs' Motion for Summary Judgment Re: Applicability of Pollutant Exclusion is
2  denied.

3     3.   Sales Tax

4  On March 17, 2003, the Insured Property and contents were damaged in a fire. The
5  Plaintiffs presented the Defendant with a claim for the damaged contents. The amount of the
6  claim exceeded $180,000.00. The Policy provides that it will pay the "actual cash value" of
7  damaged contents. The Plaintiffs argue that the Policy language must be construed to require
8  inclusion of sales tax into this actual cash value calculation. The Defendant, on the other
9  hand, argues that the Policy requires sales tax only in the event that the insured actually
10 replaces the damaged contents.

11  The parties agree that the Defendant was required to pay the Plaintiffs the actual cash
12 value of the damaged contents. They disagree as to whether the definition of the phrase
13 "actual cash value" in the Policy was intended to include sales tax.

14  The interpretation of an insurance contract is a question of law properly decided by
15 the court. *Sparks v. Republic Nat'l Life Ins. Co.*, 132 Ariz. 529, 534, 647 P.2d 1127, 1132
16 (1982); *Keggi v. Northbrook Prop. & Cas. Ins. Co.*, 199 Ariz. 43, 46, 13 P.3d 785, 788 (Ct.
17 App. 2000). The provisions of an insurance contract will be construed according to their
18 plain meaning. *Keggi*, 199 Ariz. at 46, 13 P.3d at 788. Individual clauses of an insurance
19 policy must be interpreted in the context of the whole policy "'in order to give a reasonable
20 and harmonious meaning and effect to all its provisions.'" *Nat'l Bank of Ariz. v. St. Paul*
21 *Fire & Marine Ins. Co.*, 193 Ariz. 581, 583, 975 P.2d 711, 713 (Ct. App. 1999) (quoting
22 *Sparks*, 647 P.2d at 1134). Any ambiguity contained in an insurance policy will be construed
23 against the insurer. *Nat'l Bank of Ariz.,* 193 Ariz. at 583, 975 P.2d at 713 (internal citation
24 and quotations omitted).

25  To resolve divergent interpretations of a clause within an insurance contract, the court
26 will examine "the language of the clause, the purpose of the transaction as a whole, and
27 public policy considerations." *Id.* This examination will be conducted from the viewpoint
28 of one not trained in law or in the insurance business. *Sparks*, 132 Ariz. at 534, 647 P.2d

1  at 1132; *Coconino County v. Fund Adm'rs Assoc.*, 149 Ariz. 427, 431, 719 P.2d 693, 697 (Ct. App. 1986).

The Policy[2] in this case defines "actual cash value" as "the amount which it would cost to repair or replace covered property with material of like kind and quality, less allowance for physical deterioration and depreciation, including obsolescence."  In construing the Policy, the Court follows the guidance of the Arizona state courts by interpreting the policy language according to its plain meaning as viewed from the perspective of one not trained in insurance or legal principles. *See Sparks*, 132 Ariz. at 534, 647 P.2d at 1132; *Keggi*, 199 Ariz. at 46, 13 P.3d at 788.  The phrase "actual cash value" is commonly understood to mean "money equal to the cost of replacing lost, stolen, or damaged property after depreciation." Merriam-Webster Online Dictionary (2006).

Other jurisdictions have interpreted the phrase as synonymous with "fair market value," or the price a "willing purchaser who is under no obligation to buy would pay to a willing owner who is under no obligation to sell," and found that sales tax clearly fits within the definition of "actual cash value." *See, e.g., Ghoman v. New Hampshire Ins. Co.,* 159 F.Supp.2d 928 (N.D. Tex. 2001).

The Defendant has not cited any authority that suggests that Arizona state courts would construe "actual cash value," in the present context, to exclude sales tax.  In fact, the one Arizona case that does discuss this very issue, suggests, in dicta, that the Arizona Supreme Court would take an approach consistent to the case cited above. *Zuckerman v. Transamerica Ins. Co.,* 133 Ariz. 139, 141, 650 P.2d 441, 443 (1982), involved a dispute over a settlement with an insurance company regarding a fire loss.  The insurance company

---

[2] The Plaintiffs believe Section 11a of the Policy applies.  The Defendant believes Section 3a of the Policy applies.  Regardless of which provision governs, both sections require the Defendant to pay the "actual cash value," which is defined as "the amount which it **would** cost to repair or replace covered property with material of like kind and quality, less allowance for physical deterioration and depreciation, including obsolescence."  Both provisions depend upon the language "would cost" not "did cost."  As discussed fully above, sales tax is included regardless of which provision applies.

- 6 -

1 took the position that the insurance policy permitted it to "reduce the settlement to 'actual
2 cash value,' subject to a depreciation factor and excluding contractor's overhead and profit,
3 sales tax, building permit fees, and like items." *Id.*   The Court found the insurance
4 company's position "dubious on this point," rationalizing that the company provided
5 insurance "to the extent of the actual cash value of the property . . . but not exceeding the
6 amount which it *would cost* to repair or replace the property." *Id.* at n.2 (italics in original).

7 Similarly, the Policy at issue in this case does insure the Plaintiffs in "the amount
8 which it *would cost* to repair or replace covered property with material or like kind and
9 quality . . . " (emphasis added).  Note that the Policy does *not* say, "the amount which it *did*
10 cost to repair or replace . . . "   Thus, the Court rejects the Defendant's argument that it does
11 not have to pay sales tax unless and until the Plaintiffs actually replaces the contents.  A
12 reasonable interpretation of the Policy is that it covers any cost that an insured is reasonably
13 likely to incur when repairing or replacing covered property.

14 When an insurer desires to limit its liability under a policy, it should employ terms
15 which clearly and distinctly describe the nature of the exclusion. *Sparks*, 647 P.2d at 1133;
16 *see Brown v. United States Fid. & Guar. Co.*, 194 Ariz. 85, 95, 977 P.2d 807, 817 (Ct. App.
17 1999).  Nothing in this Policy suggests that "actual cash value" excludes sales tax in the
18 context used in this case.

19 The insured in this case is reasonably likely to incur sales tax when replacing contents
20 with material of like kind and quality, therefore, applicable policy provision applies to
21 include sales tax.  This Court's holding is consistent with the fundamental purpose of a fire
22 insurance policy which is to fully indemnify the insured. *Liristis v. Am. Fam. Mut. Ins. Co,*
23 204 Ariz. 140, 145, 61 P.3d 22, 27 (Ct. App. 2003).  The Plaintiffs' Motion for Partial
24 Summary Judgment Re: Sales Tax is Granted.

25    B.    Plaintiffs' Bad-Faith Claim

26 The Defendant argues that the undisputed facts fail to establish that the Defendant's
27 coverage decisions, investigation, evaluation, and payment of the Plaintiffs' claims were
28 unreasonable.  The Court agrees.

1 In Arizona, the tort of bad faith shares elements of both a negligence action and an intentional tort. *Tru Joist Corp. v. Safeco Ins. Co. of Am.,* 153 Ariz. 95, 104, 735 P.2d 125, 134 (Ct. App. 1987). The tort consists of two elements. *Id.* The insured must show that: (1) the insurer acted *unreasonably* in its handling of the insured's claim; and (2) that the insurer acted *knowing* that it was acting unreasonably, or *with such reckless disregard* that knowledge may be imputed to it. *Id.* The first element is a clear objective test: did the insurance company act in a manner consistent with the way a reasonable insurer would be expected to act under similar circumstances. *Id.* This is the threshold test for all bad-faith actions. *Id.*

The tort of bad faith only arises when an insurer *knowingly* or *intentionally* denies or fails to process or pay a claim *without a reasonable basis* for such action. *Lasma Corp. v. Monarch Ins. Co.,* 159 Ariz. 59, 63, 764 P.2d 1118, 1122 (Ariz. 1988); *Trus Joist Corp.,* 153 Ariz. at 104, 735 P.2d at 134. Mere negligence or inadvertence is not sufficient to satisfy the "intent" necessary to establish bad faith. *Trus Joist Corp.,* 153 Ariz. at 104, 735 P.2d at 134. The insurer must intend the act or omission and must form that intent without reasonable or "fairly debatable" grounds. *Id.* Thus, if an insurer's conduct is reasonable or fairly debatable, there is no liability for bad faith. *Id.*

In order to support a claim of bad faith, Arizona law requires the Plaintiffs to set forth facts which indicate that the Defendant lacked a reasonable basis for denying the Plaintiffs' claims. *See, e.g., Noble v. Nat'l Am. Life Ins. Co.,* 128 Ariz. 188, 189, 624 P.2d 866, 867 (1981). Whether the insurer acted reasonably under a particular set of circumstances is sometimes a question of fact. However, there are times when the issue of bad faith is not a question appropriate for determination by the jury. *Aetna Cas. and Sur. Co. v. Maricopa County Super. Ct.,* 161 Ariz. 437, 440, 778 P.2d 1333, 1336 (Ct. App. 1989); *accord Lasma Corp.,* 159 Ariz. at 63, 764 P.2d at 1122. This is one of those instances.

The Plaintiff has not presented evidence of intentionally wrongful or unreasonable conduct in this case.

Based on the state of the law and the facts at issue in this case, the Defendant acted

- 8 -

1 in a manner consistent with the way a reasonable insurer would be expected to act under
2 similar circumstances. Because the Plaintiffs have failed to come forward with evidence
3 from which reasonable jurors could conclude that the Defendant: (1) acted unreasonably; and
4 (2) knew or was conscious of the fact that its conduct was unreasonable, the Defendant's
5 Motion for Summary Judgment is granted with respect to the Plaintiffs' bad-faith claim.[3]

   C. Punitive-Damages Claim

The Defendant argues that it is entitled to summary judgment on the Plaintiffs' punitive-damages claim because the Defendant's conduct, even if true, fails to rise to the level of intent necessary to award punitive damages. The Court agrees.

The party claiming punitive damages has the burden of proving by clear and convincing evidence that the wrongdoer acted with an "evil mind." *Thompson v. Better-Bilt Aluminum Products Co., Inc.*, 171 Ariz. 550, 557, 832 P.2d 203, 210 (1992). In determining whether an individual acted with the requisite evil mind, courts look at the nature of the conduct, including the reprehensibility of the conduct and the severity of the harm likely to result, the harm that has occurred, the duration of the misconduct, the degree of awareness of the harm or risk of harm, and any concealment of it. *Id.* Additionally, similar to a bad-faith claim, punitive damages are unavailable unless the alleged wrongdoer is *consciously aware of the wrongfulness or harmfulness of his conduct and yet continues to act* in the same manner in deliberate contravention to the rights of the victim. *Id.* 171 Ariz. at 556, 832 P.2d at 209.

In bad-faith cases, punitive damages are not available unless the evidence establishes that, in addition to bad faith, the insurer acted with an evil mind. *Gurule v. Illinois Mut. Life and Cas. Co.,* 152 Ariz. 600, 601, 734 P.2d 85, 86 (1987). In other words, the evidence

---

[3] The appropriate inquiry is "whether there is sufficient evidence from which reasonable jurors could conclude that in the investigation, evaluation, and processing of the claim, the insurer acted unreasonably and either knew or was conscious of the fact that its conduct was unreasonable." *Zilisch v. State Farm Mutual Automobile Ins. Co.,* 196 Ariz. 234, 238, 995 P.2d 276, 280 (2000). Because there is insufficient evidence for a reasonable juror to reach such a conclusion, there is no question for the jury in this case.

1 needed to support an award of punitive damages must reflect something more than reckless
2 disregard. *Farr v. Transamerica Occidental Life Ins. Co.,* 145 Ariz. 1, 8, 699 P.2d 376, 383
3 (Ct. App. 1985).
4       The Court has already determined that the Defendant's conduct was reasonable. The
5 Plaintiffs have failed to present evidence that the Defendant was consciously aware that its
6 was not only "wrongful" but did so in deliberate contravention to the Plaintiffs' rights.
7       The Plaintiffs have failed to meet their burden by coming forth with some evidence
8 suggesting that the Defendant acted with the requisite intent to harm the Plaintiffs, or the
9 "evil mind" necessary to support a claim for punitive damages. The Defendant's Motion for
10 Summary Judgment is granted with respect to the Plaintiffs' punitive-damages claim.
11       Accordingly,
12 / / /

1  IT IS ORDERED GRANTING IN PART[4] AND DENYING IN PART the
2  Defendant's Motion for Summary Judgment (doc. 85).
3  IT IS FURTHER ORDERED DENYING the Plaintiffs' Motion for Partial Summary
4  Judgment Re: Applicability of "Pollutant" Exclusion (doc. 87).
5  IT IS FURTHER ORDERED GRANTING the Plaintiffs' Motion for Partial Summary
6  Judgment Re: American Family's Contractual Obligation to Include Sales Tax in
7  Computation of Actual Cash Value Adjustment (doc. 89).
8  DATED this 24th day of August, 2006.

*James A. Teilborg*
United States District Judge

---

[4] The Court granted summary judgment in favor of the Defendant only on the Plaintiffs' claims of bad faith and punitive damages.